IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION

| | | |
|---|---|---|
| CHARLES P. PRIDE | § | PLAINTIFF |
| | § | |
| V. | § | CAUSE NO. 1:10cv100-LG-RHW |
| | § | |
| CITY OF BILOXI; A.J. HOLLOWAY | § | |
| in his official capacity; | § | |
| GEORGE LAWRENCE, | § | |
| WILLIAM STALLWORTH, | § | |
| CHARLES HARRISON, MIKE | § | |
| FITZPATRICK, TOM WALL, | § | |
| ED GEMMILL, and DAVID | § | |
| FAYARD, in their official | § | |
| capacities; BILOXI COMMUNITY | § | |
| DEVELOPMENT DEPARTMENT; | § | |
| BILOXI CODE ENFORCEMENT; | § | |
| JERRY CREEL, TIM CIPPOLLA, | § | |
| MIKE ANDREWS, and other | § | |
| UNKNOWN DEFENDANTS | § | |
| in their official and individual | § | DEFENDANTS |
| capacities | § | |

## ORDER GRANTING IN PART AND DENYING
## IN PART DEFENDANTS'MOTION TO DISMISS

BEFORE THE COURT is Defendants' [27] Motion to Dismiss Based on

Immunity, Lack of Jurisdiction and for Failure to State a Claim upon which Relief Can

Be Granted.  Plaintiff Charles P. Pride, proceeding *pro se*, filed this lawsuit against

Defendants City of Biloxi ("the City"); Biloxi Mayor A.J. Holloway, City Councilman

George Lawrence, Councilman William Stallworth, Councilman Charles Harrison,

Councilman Mike Fitzpatrick, Councilman Tom Wall, Councilman Ed Gemmill, and

Councilman David Fayard in their official capacities; the Biloxi Community

Development Department; "Biloxi Code Enforcement;" and Director of Community

Development Jerry Creel, Tim Cippolla, Mike Andrews, and other unknown defendants in their official and individual capacities. (*See* 2d. Am. Compl. [16]) (hereinafter"Compl.").[1]  Pride filed his complaint "pursuant to 42 U.S.C. Section 1983 to redress violations" of his rights under the Fourth, Fifth, Sixth, Eighth, and Fourteenth Amendments to the United States Constitution. (Compl. at ¶ 1).

Pride's complaint, liberally construed, alleges a number of civil rights violations and due process deprivations, including  takings and "conspiracy" (Compl. at ¶ 40, ¶ 46), and "failure to train" by policymakers (*id.* at ¶ 47), as well as claims of slander and defamation (*id.* at ¶ 39), and emotional distress (*id.* at ¶ 44).  The complaint also references, *inter alia*, deprivation of Pride's "life, liberty, and property rights" (*id.* at ¶ 9, ¶ 13), being denied the ability to "confront[] . . . his accuser, as to the probable cause" for the "arbitrary Stop Work Order," (*id.* at ¶ 9, ¶ 12), "retaliation against the Plaintiff's civil rights," (*id.* at ¶ 9) , a cruel and unusual fine and jail sentence (*id.* at ¶ 14, 23), "malicious prosecution" (*id.* at ¶ 15), deprivation of his "constitutional access to appealite [sic] court" (*id.* at ¶ 17), double jeopardy (¶ 20), deprivation of due process under color of law (*id.* at ¶ 24), a "fourth amendment deprivation search of [his] home,"

---

[1] Plaintiff filed his original complaint [1] on March 5, 2010, but never served process on any defendant.  Plaintiff filed his first amended complaint [15] on November 15, 2010, but again, no summons was issued for any defendant.  Plaintiff filed his second amended complaint [16] on December 10, 2010, and summons were issued for Defendants A.J. Holloway, George Lawrence, William Stallworth, Tom Wall, Ed Gemmill, David Fayard, Jerry Creel, Tim Cippolla, and Mike Andrews. The Court will not consider Plaintiff's first two complaints because process was never served as required under Federal Rule of Civil Procedure 4.  All references to Plaintiff's complaint in this order shall be to Plaintiff's second amended complaint.

(*id.* at ¶ 28), and an "arbitrary and malicious Biloxi structural inspection report" (*id.*). A number of the complaint's factual allegations are incoherent.

Pride seeks relief in the form of a declaratory judgment, compensatory damages in various amounts totaling over four million dollars, and punitive damages of over six million dollars. (*See* Compl. at ¶ 1,¶¶ 39-48).

Defendants move to dismiss Pride's complaint on the grounds that (i) Plaintiff's "takings" claims are not ripe; (ii) Plaintiff did not comply with the notice provisions of the Mississippi Tort Claims Act; (iii) the allegations in Plaintiff's complaint cannot establish liability under 42 U.S.C. § 1983; and (iv) Plaintiff's claims for punitive damages are barred by state and federal law.  In the event the motion to dismiss is not granted, Defendants seek a stay of these proceedings pending the outcome of Plaintiff's criminal appeal in state court. (Def's. Mot. at 5).  Plaintiff has not responded to Defendants' motion.  The Court has considered the briefs and relevant legal authority. For the following reasons, Defendants' Motion to Dismiss [27] is GRANTED in part and DENIED in part.

## FACTS

This civil rights lawsuit arises from the events surrounding a citation issued by the City of Biloxi against Plaintiff Pride regarding the state of his property. Sometime after the citation was issued, the City took action that led to the demolition of the structure on Pride's property.

The facts as pled in Pride's complaint are difficult to discern, but a basic summary is as follows.  Pride claims he was first cited for a violation of Biloxi's

municipal code "Section 5-3-5" on March 1, 2006. (Compl. at ¶ 5).  The citation was issued by Biloxi Code Enforcement Officer Tim Cippolla, and stated that the structure[2] on Pride's property was "dilapidated, unfit, unsecure, unhealthy and dangerous." *Id.* According to Pride, the City also attached a "Stop Work Order" to his home on the same date. *Id.* at ¶ 7, ¶ 9.

Pride claims that the condition of his property was due to damage caused by Hurricane Katrina.[3] (Compl. at ¶ 5).  Pride alleges that Defendant Cippolla cited Pride for debris caused by Hurricane Katrina, and then "arbitrarily and maliciously" ordered Pride not to clean up the debris under the Stop Work Order. *Id.* at ¶ 9.  Pride alleges that despite his repeated requests to the City, the Stop Work Order was not lifted, so his property could not be restored. *Id.*  Pride alleges that the  failure to lift the Stop Work Order was the beginning of a "conspired Biloxi policy of a deliberate and intentional retaliation against [his] civil rights" that eventually led to the taking of his home by "inverse condemnation." *Id.*

Pride alleges that the Stop Work Order prevented volunteer groups (presumably, volunteers who were assisting residents following Hurricane Katrina) from helping him clean up the debris on his property. (Compl. at ¶ 10).  Therefore, Pride claims, he

---

[2] Pride's complaint does not specify what, or how many, structures existed on the property.

[3] It is unclear when Pride returned to his property after Hurricane Katrina; his complaint alleges that the citation he received on March 1, 2006 was prior to his return to the property after the hurricane, but he also references that same date as "his first week back." *See* Compl. at ¶ 5, ¶ 7.

had to "undertake the massive disaster debris removal on his own, in confused violation of the posted arbitrary Stop Work Order, following verbal order and the verbal Biloxi citation." *Id.*  As a result of his labor, Pride claims he suffered physical injury and "severe physical, mental and emotional exhaustion." *Id.*  Pride also alleges that the Stop Work Order led to his inability to secure an approved FEMA trailer, and he had to sleep in his car during the winter.[4]  *Id.* at ¶¶ 10-11.

Pride alleges that Defendant Jerry Creel caused a "fourth amendment deprivation search" of his home, and references a "arbitrary malicious Biloxi structural inspection report." (Compl. at ¶ 28).  The exact chain of events is not clear, but at some point after Pride was cited for the violations of the Biloxi Code, the City towed Pride's truck and motorcycle, and contractors entered the property and undertook a demolition of the structure(s). *Id.* at ¶¶ 28-30.  According to Pride, Defendant Jerry Creel "conspired with bidding demolition contractor, to take without compensation, all of the Plaintiff's personal property." *Id.* at ¶ 29.  Pride also claims that Creel ordered the demolitions and towing of his vehicles, the removal of trees from his property, and that Pride's water be turned off. *Id.* at ¶¶ 29-30, ¶¶ 33-34.  Pride also alleges that he was denied access to his property during the demolition, and that the contractor disposed of hazardous waste from his property in an unlawful manner. *Id.* at ¶¶ 31-32.

Pride's complaint also includes claims regarding the criminal proceedings brought against him in Biloxi City Court, where he was apparently convicted of a

---

[4] Pride also alleges that a city conspiracy caused the taking of his FEMA trailer. (Compl. at ¶ 37).

charge related to industrial and hazardous waste, and fined in the amount of $535.00 on April 26, 2006. (Compl. at ¶ 13). Pride was then "mandated to be in successive Court dates," where he alleges he was "maliciously prosecuted and subsequently convicted for unclear, nonspecified charges" and was subjected to cruel and unusual fines.[5] *Id.* at ¶¶ 14-16. According to Pride, he appealed to the County Court of Harrison County, and his conviction was overturned. *Id.* at ¶ 17, ¶ 20. Pride alleges that while his appeal was pending, additional Biloxi "malicious prosecution" police actions were taken against him by Defendant Cippolla and Defendant Jerry Creel, in "retaliation" and which constituted a "double jeopardy deprivation." *Id.* at ¶¶ 20-25. Pride claims that his due process rights were violated because he did not receive adequate notice regarding the police action(s), but the facts underlying this claim are unclear. *Id.* at ¶ 24.

Pride was convicted in City Court a second time, but the complaint does not specify what the charges against Pride were in that proceeding. (Compl. at ¶ 23). Pride was sentenced to 30 days in jail, which he claims was cruel, unusual, and excessive. *Id.* Pride claims that his conviction constituted double jeopardy and caused a deprivation of his life, liberty, and property rights. *Id.* According to the complaint,

---

[5] The timeline of the criminal proceedings as it relates to the facts surrounding the demolition of Plaintiff's property is not clear. Pride states he made his first appearance in City Court in April 2006, but the complaint does not provide a date on which his property was towed and/or demolished. (*See* Compl. at ¶ 13). According to Defendants' motion, criminal charges were brought against Pride in 2008, and the demolition of the "existing structure on Plaintiff's property" occurred on February 10, 2009. (Def's. Mot. at 2).

Pride's appeal of this conviction is still pending, and with this lawsuit, he pursues a "parallel" federal action under Section 1983. *Id.*

## STANDARD OF REVIEW

In considering a motion to dismiss, the court accepts as true all well-pleaded facts and views them in the light most favorable to the plaintiff. *Baker v. Putnal*, 75 F.3d 190, 196 (5th Cir. 1996). However, a court is not bound to accept legal conclusions couched as factual allegations. *Papasan v. Allain*, 478 U.S. 265, 286 (1986). The plaintiff must plead sufficient facts to state a claim for relief that is facially plausible. *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 129 S.Ct. at 1949 (quoting *Twombly*, 550 U.S. at 570.) Additionally, *pro se* complaints are held to "less stringent standards than formal pleadings drafted by lawyers." *Haines v. Kerner*, 404 U.S. 519, 521 (1972).

## ANALYSIS

### I. Takings Claims

Defendants move to dismiss Plaintiff's "takings" claims on the grounds that they are not ripe for the Court's consideration. *See* [29] Defendants' Memorandum Brief in Support of Their Motion to Dismiss Based on Immunity, Lack of Jurisdiction and for Failure to State a Claim upon which Relief can be Granted (hereinafter"Defs.' Mem.") at 6. Defendants argue that Pride has not pursued compensation for the alleged

takings through state procedures, as he is required to do under applicable Fifth Circuit law, citing *Waltman v. Payne*, 535 F.3d 342 (5th Cir. 2008).   Therefore, Defendants argue, Plaintiff's claims regarding unconstitutional takings of his property by the City are not yet ripe for consideration in federal court.

The Takings Clause of the Fifth Amendment, made applicable to the States through the Fourteenth Amendment, directs that "private property" shall not "be taken for public use, without just compensation." *Urban Developers LLC v. City of Jackson, Miss.*, 468 F.3d 281 (2006) (internal citation omitted).   Plaintiff's complaint alleges a violation of the Fifth Amendment Takings Clause. *See Tahoe-Sierra Pres. Council, Inc., et al. v. Tahoe Reg'l Planning Agency, et al.*, 535 U.S. 302, 322 (2002) ("In determining whether government action affecting property is an unconstitutional deprivation of ownership rights under the Just Compensation clause, a court must interpret the word "taken."  When the government condemns or physically appropriates the property, the fact of a taking is typically obvious and undisputed.")

However, in order for a claim under the Takings Clause to be ripe, Plaintiff must have sought just compensation for the alleged taking through state procedures and have been denied.   *Urban Developers*, 468 F.3d at 294.   The Supreme Court held in *Williamson County Regional Planning Commission v. Hamilton Bank*, 473 U.S. 172 (1985), that a takings claim was not ripe because the plaintiff "did not seek compensation through the procedures the State ha[d] provided for doing so." *Id*. at 194. The court reasoned that "if a State provides an adequate procedure for seeking just

compensation, the property owner cannot claim a violation of the . . . . [Fifth Amendment] until it has used the procedure and been denied just compensation." *Id.* Moreover, "the property owner bears the burden of proving that state law proceedings are unavailable or inadequate." *Id.* at 197.

Here, there is no evidence that Pride has pursued his claims under the Fifth Amendment Takings Clause in the state courts, and Pride makes no argument that he has sought compensation through any state procedure. Therefore, Pride's takings claims are not ripe. Because the Court has no jurisdiction over claims that are not ripe, Defendants' motion to dismiss Plaintiff's claims under the Takings Clause of the Fifth Amendment is granted.

## II. Claims under the Mississippi Tort Claims Act

Defendants move to dismiss all of Pride's claims under the Mississippi Tort Claims Act (MTCA) on the grounds that Pride did not comply with the notice provision of the Act.

The MTCA requires that a person making a claim against a governmental entity or a government employee must file a notice of the claim with the governmental entity ninety (90) days prior to filing an action in court. *See* Miss. Code Ann. § 11-46-11(1).[6]

---

[6] The language of Miss. Code Ann. § 11-46-11(1) provides, in pertinent part:

> After all procedures within a governmental entity have been exhausted, any person having a claim for injury arising under the provisions of this chapter against a governmental entity or its employee shall proceed as he might in any action at law or in equity; provided, however, that ninety (90) days prior to maintaining an action thereon, such

9

Under Mississippi law, "[t]he notice of claim requirement 'imposes a condition precedent to the right to maintain an action.' " *Clanton v. DeSoto Cnty. Sheriff's Dept.*, 963 So.2d 560, 563 (¶ 7) (Miss. Ct. App. 2007) (quoting *Gale v. Thomas*, 759 So.2d 1150, 1159 (¶ 33) (Miss.1999)). "The timely filing of the notice of claim is a jurisdictional prerequisite." *Id.*

It is not clear from Pride's complaint what, if any, claims he alleges under the MTCA, but Pride does allege non-specific claims of slander and defamation, Compl. at ¶ 39, and emotional distress. *Id.* at ¶ 44. Pride has not argued that he filed notice of these or any other claims under the MTCA with the City of Biloxi, and there is no evidence in the record that suggests he has complied with the requirements of Miss. Code Ann. § 11-46-11. As noted above, under Mississippi law, compliance with the notice requirement is a condition precedent to maintaining such an action. Therefore, to the extent Pride alleges claims under the MTCA, Defendants' motion to dismiss such claims is granted.

## III. Claims under 42 U.S.C. § 1983

Defendants move to dismiss all of Pride's Section 1983 claims. Defendants argue that Pride's claims against the Mayor and the individually-named City employees are the functional equivalent of claims against the City, and Pride has not established any

---

person shall file a notice of claim with the chief executive officer of the governmental entity. Service of notice of claim may also be had in the following manner: . . . . if the governmental entity is a municipality, then upon the city clerk.

municipal liability on the part of the City.  Defendants also argue that the Mayor and
other  individually-named City employees are entitled to qualified immunity.

Section 1983 imposes liability upon any person who, acting under color of state
law, deprives another of federally protected rights.  Section 1983 does not itself create
any federally protected right, but creates a cause of action for persons to enforce federal
rights created elsewhere, including other federal statutes and the United States
Constitution. *Chapman v. Houston Welfare Rights Org.*, 441, U.S. 600, 608 (1979)
(Section 1983 "creates no substantive rights; it merely provides remedies for
deprivations of rights established elsewhere."). In his complaint, Pride sues under
Section 1983 to redress violations of his rights under the Fourth, Fifth, Sixth, Eighth,
and Fourteenth Amendments. (Compl. at ¶ 1.)

*Claims against Defendants in their Official Capacities*

The Supreme Court has held that claims against a governmental agent in his
or her official capacity are not against the actual employee, but are against the office
that the employee holds. *Kentucky v. Graham*, 437 U.S. 159, 165 (1985) (citing *Monell
v. Dep't of Soc. Servs.*, 436 U.S. 658, 690 n.55) (1978) ("official-capacity suits generally
represent only another way of pleading an action against an entity of which an officer
is an agent.")). *See also Brandon v. Holt*, 469 U.S. 464, 471-72 (1985).

Pride's claims against the individual defendants are effectively claims against
the City of Biloxi.  Given that the City is a named defendant, the official capacity
claims against individual officials are redundant of the suit against the City.  Federal
courts have held that in such a case, official capacity claims against individual officials

11

may be dismissed as duplicative or redundant of the municipal entity claims. *See Burnett v. City of Southaven*, No. 2:08-CV-45-P-A, 2009 WL 1683981 at *1 (N.D. Miss. June 15, 2009) ("The official capacity claim is tantamount to a claim against the City . . . . [a]ccordingly, the official capacity claim . . . is redundant and . . . . should be dismissed.") (citing *Roberts v. City of Shreveport*, 397 F.3d 287, 291 (5th Cir. 2005)); *Cooper v. City of Plano*, No. 4:10-CV-689, 2011 WL 4100721 at *4 (E.D. Tex. Aug. 19, 2011) (holding official capacity claims were redundant of claims against the City, and should be dismissed); *Cotton v. District of Columbia*, 421 F. Supp. 2d 83, 86 (D.D.C. 2006) (calling duplicative cases suing government officials in their official capacity "redundant" and an "inefficient use of judicial resources"). *But see Knox v. City of Monroe*, No. 07-CV-606, 2009 WL 57115 (W.D. La. Jan. 8, 2009) at *5 n. 12 (stating that official capacity claim is redundant, but not uncognizable, because it merges with claim against the City).

Accordingly, Defendants' motion to dismiss Pride's claims against the individually-named defendants in their official capacities is granted.[7]

The next question, then, is whether Pride's 1983 claims against the City should also be dismissed.  These claims must satisfy the municipal liability test, which

_____

[7] Pride's complaint also lists in the caption "Biloxi Community Development Department" and "Biloxi Code Enforcement" with the defendants.  It is not clear whether Pride intends to name the Community Development Department or "Biloxi Code Enforcement" as defendants in this action, but the Court finds that claims against them would effectively be claims against the City of Biloxi.  The Biloxi Community Development Department and "Biloxi Code Enforcement" are not appropriate defendants, and any claims against them are dismissed.

requires that the City was a policy maker, that it had an official policy or custom, and that this policy or custom was the "moving force" behind the violation of constitutional rights. *See Monell v. Dep't of Social Servs.*, 436 U.S. 658, 694-95 (1978); *Piotrowski v. City of Houston*, 237 F.3d 567, 578 (5th Cir. 2001); *McKinney v. Irving Indep. Sch. Dist.*, 309 F.3d 308, 313 (5th Cir. 2002). The Supreme Court explained in *Monell* that "[l]ocal governing bodies . . . . can be sued directly under § 1983 for monetary, declaratory, or injunctive relief where . . . . the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers." 436 U.S. at 690. Additionally, municipalities may only be held liable for actions taken pursuant to an official policy if such actions caused a constitutional tort. *Id.* at 691. Such injury cannot be solely inflicted by the City's employees or agents; to hold the City liable, Pride must show that it was the "execution of [the] government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy," that inflicted the injury. *Id.* at 694.

Pride's complaint alleges that a "conspired Biloxi policy" led to the taking of his home and a deprivation of his right to due process. (*See* Compl. at ¶ 28). He also alleges that Defendant Jerry Creel, whom Pride claims directed the taking of his property, was a "policymaker." *See* Compl. at ¶ 21.

It is difficult to determine what policy or custom Pride alleges caused the deprivation of his constitutional rights. He references an "established Biloxi policy," *see* Compl. at ¶ 22, but does not specify what policy, or even what type of policy,

caused his injuries.[8]  Throughout his complaint, Pride makes broad accusations about a "conspiracy," but does not point to any official policy or custom as the "moving force" behind the violation of his rights.   An allegation of a conspiracy alone does not establish a violation of Section 1983. *See Thore v. Howe*, 466 F.3d 173, 179 (1st Cir. 2006).  In order to establish a "policy" or "custom," Pride must allege some facts beyond the incident that gives rise to his suit.  *See, e.g., Giarrusso v. Chicago,* 539 F. Supp. 690,693-94 (N.D. Ill. 1982).  Pride does not reference any other citations issued against him or any other person, any other unlawful takings, or any other constitutional deprivations by the City, other than the incident underlying his complaint.  Given the lack of additional facts, it appears unlikely that Pride could establish that an official policy of the City was the "moving force" behind the constitutional deprivations he claims occurred.

Pride also makes references to the "malicious prosecution" against him being conducted "without training," and describes Officer Tim Cippolla as "untrained."  *See* Compl. at ¶¶ 21-22.  "[T]here are limited circumstances in which an allegation of a 'failure to train' can be the basis for liability under § 1983." *City of Canton v. Harrison*, 489 U.S. 378, 387 (1989).  In *City of Canton*, the Supreme Court held that liability may be based on inadequate training "only where the failure to train amounts to deliberate indifference to the rights of persons with whom the police come in contact." *Id.* at 388.  The issue is first whether the training is adequate, and if not, then the "question

---

[8] Pride's complaint also alleges that the City of Biloxi operated "without a policy" or "procedure."  *See* Compl. at ¶ ¶ 21, 22.

becomes whether such inadequate training can justifiably be said to represent 'city policy.'" *Id.* at 390. As the Supreme Court explained, if "the need for more or different training is so obvious, and the inadequacy so likely to result in the violation of constitutional rights," then it may be that "the policymakers of the city can reasonably be said to have been deliberately indifferent to the need." *Id.* It is in this event that a "failure to properly train," if such a failure "actually causes injury," may establish municipal liability. *Id.* Under the standard established in *City of Canton*, the Court cannot find that Pride's reference to an officer as "untrained" and a conclusory allegation that the City conducted actions "without training" could establish municipal liability on the basis of inadequate training under Section 1983.

However, under certain circumstances, a decision by a government official, even if it involves only a single incident, may be considered a "policy" when that official has policy-making authority. *Pembaur v. City of Cincinnati*, 475 U.S. 469 (1986). In such a case, "[m]unicipal liability attaches only where the decisionmaker possesses final authority to establish municipal policy with respect to the action ordered." *Id.* at 482-83 (1986). Additionally, the plaintiff must show that the defendant acted with "deliberate indifference," and that there is a "direct causal link between the municipal action and the deprivation of the federal rights." *In re Foust*, 310 F.3d 849, 862 (5th Cir. 2002).

Pride has made a number of factual allegations against Defendant Jerry Creel, the Director of Community Development for the City of Biloxi, whom Pride alleges is a "policymaker." Whether an official has final authority to establish municipal policy

with respect to a particular action is a question of state law. *Pembaur,* 475 U.S. at 483. Pride's complaint does not specify the legal basis for Creel's authority, and Defendants do not address Defendant Creel's decision-making authority in the instant motion.

Section 2-1-2 of the Biloxi Code of Ordinances provides for the establishment of administrative departments, including the department of community development, and provides that "each department [is] headed by a director, who shall be appointed and shall serve pursuant to the provisions of MCA 1972, § 21-8-23." Miss Code Ann. § 21-8-23 provides in pertinent part:

> (1) The municipality may have a department of administration and such other departments as the council may establish by ordinance. All of the administrative functions, powers and duties of the municipality shall be allocated and assigned among and within such departments.
>
> (2) Each department shall be headed by a director, who shall be appointed by the mayor and confirmed by an affirmative vote of a majority of the council present and voting at any such meeting. Each director shall serve during the term of office of the mayor appointing him, and until the appointment and qualification of his successor.

Section 2-1-4 of the Biloxi Code of Ordinances sets forth the powers and duties of the department of community development, which is responsible for "administration, supervision, management and operation of city planning, the building department and inspections, code enforcement, zoning, revitalization and grants, economic development, [and] housing," among other things. The Court concludes that Defendant Creel, having been appointed by the mayor as the director of the department with authority to enforce the municipal code, was a policymaker for purposes of Section

16

1983.

Pride's complaint does not specify which of Creel's decisions violated which of his constitutional rights, or what decisions he alleges amounted to "policy." However, he does allege that Creel's actions were "malicious," and the specific factual allegations against Creel, if true, would amount to "deliberate indifference" that caused a deprivation of Pride's right to due process. As discussed *infra*, Pride alleges that Creel conspired with a demolition contractor to take all of the Plaintiff's personal property, Compl. at ¶ 29, ordered Pride's vehicles to be towed from his property without notice or hearing, *id*. at ¶ 30, denied him access to his property during the demolition process, *id*. at ¶ 31, and that Creel informed Pride that he would ensure through Biloxi zoning that Pride would not be permitted "any further building uses for his property[.]" *Id*. at ¶ 35.

Given the allegations regarding Defendant Creel, the authority provided to the Director of Community Development under the Biloxi Code of Ordinances, and the less stringent standard under which *pro se* complaints are evaluated, the Court cannot find that the Pride has not alleged any set of facts on which he could demonstrate municipal liability against the City under Section 1983. The Court can be better evaluated the issue with the help of summary judgment evidence. Accordingly, Defendants' motion to dismiss Pride's claims under Section 1983 against the City of Biloxi is denied.

*Claims against Defendants in their Personal Capacities*

Claims under Section 1983 against individual public officials are subject to the

defense of qualified immunity. *Foley v. Univ. of Houston Sys.* 355 F.3d 333, 338 (5th Cir. 2003) (citing *Todd v. Hawk*, 72 F.3d 443, 445 n. 7 (5th Cir. 1995); *Wicks v. Miss. State Emp. Servs.*, 41 F.3d 991, 996 n. 21 (5th Cir. 1995); *Coleman v. Houston Indep. Sch. Dist.*, 113 F.3d 528, 534 (5th Cir. 1997)).  "Qualified immunity balances two important interests– the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009).  "The doctrine of qualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Id.* (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)).  If an official's conduct was objectively reasonable, it does not matter if that official's conduct violated a constitutional right; he is still entitled to qualified immunity. *Nerren v. Livingston Police Dep't*, 86 F.3d 469, 473 (5th Cir. 1996).

In evaluating a claim of qualified immunity, the court considers (1) whether the plaintiff has alleged a violation of a constitutional right, and (2) whether that right was clearly established at the time of the alleged misconduct. *Saucier v. Katz*, 533 U.S. 194, 200 (2001), *overruled in part by Pearson*, 555 U.S. 223 (2009).  Courts have discretion to determine which of these questions to address first. *Pearson*, 555 U.S. at 236.

"The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Saucier*, 533 U.S. at 202. *See also Wernecke*

18

*v. Garcia*, 591 F.3d 386, 392 (5th Cir. 2009) ("[W]hether an official protected by qualified immunity may be held personally liable for an allegedly unlawful official action generally turns on the 'objective legal reasonableness' of the action, assessed in light of the legal rules that were 'clearly established' at the time it was taken.") Moreover, each defendant's actions must be evaluated individually. *Meadours v. Ermel*, 483 F.3d 417, 421-22 (5th Cir. 2007). *See also Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1948 (2009) ("a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution.").

Moreover, "government officials performing discretionary functions [enjoy] qualified immunity, . . . . as long as their actions could reasonably have been thought consistent with the rights they are alleged to have violated." *Good v. Curtis*, 601 F.3d 393 (5th Cir. 2010) (quoting *Anderson v. Creighton*, 483 U.S. 635, 638 (1987)).  The *Good* court emphasized this point, noting that "qualified immunity generally protects 'all but the plainly incompetent or those who knowingly violate the law.' *Id.* (quoting *Malley v. Briggs*, 475 U.S. 335, 341 (1986). *See also Nerren v. Livingston Police Dep't*, 86 F.3d 469, 473 (5th Cir. 1996) ("even if an official's conduct violates a constitutional right, he is entitled to qualified immunity if the conduct was objectively reasonable.")

Therefore, in order to overcome Defendants' defense of qualified immunity, Pride's complaint must allege facts that, if true, demonstrate that each individual defendant violated his rights by acting in a way that he or she should have known was unlawful.  "When considering a defendant's entitlement to qualified immunity, we must ask whether the law so clearly and unambiguously prohibited his conduct that

'*every* reasonable official would understand that what he is doing violates [the law].'"
*Morgan v. Swanson*, No. 09-40373, 2011 WL 4470233 at *7 (5th Cir. Sept. 27, 2011)
(citing *Ashcroft v. Al-Kidd*, 131 S.Ct. 2074, 2083 (2011)). The Court examines Pride's
allegations against Defendants in light of this standard.

   *Tim Cippolla:*

   Pride has alleged that Defendant Tim Cippolla "unconstitutionally cited" his
home for a violation of the Biloxi Code and that Cippolla was "untrained, unsupervised,
undisciplined and overworked." (Compl. at ¶ 5).  Pride alleges that Cippolla "willfully
both cited Plaintiff for Katrina caused debris and then arbitrarily and maliciously
order [sic] Plaintiff not to clean up said cited debris." (Compl. at ¶ 9).  He also alleges
that Cippolla "deliberately failed to recorded [sic] the arbitrary Stop Work Order in the
Biloxi enforcement computer" and would not remove the Stop Work Order, despite
plaintiff's repeated requests. *Id.*  Pride further alleges that Cippolla continued the
"retaliatory, malicious prosecution, by refiled [sic] his Biloxi action a second time"
while the first was still on appeal.[9] (Compl. at ¶ 20). Pride also alleges that Cippolla
conducted "dozens of repeated unannounced . . . trespass searches" of his property.
(Compl. at ¶ 22).

   The Court construes Pride's complaint as alleging that he was deprived of
property under the Due Process clause as a result of the citation(s) issued by Cippolla.
In order to establish a due process violation, Pride must show that Cippolla

---

   [9] It appears that Pride was cited a second time while he was appealing the fine
assessed for the first citation violation.

deliberately caused the deprivation of his rights. *See Daniels v. Williams*, 474 U.S. 327, 330 (1986).  Pride has alleged that Cippolla did a number of things "deliberately" or "willfully," but these claims are conclusory in nature, and Pride provides no factual support for them.  A simple assertion that an action was "deliberate" does not allow the Court to reasonably infer that Cippolla deliberately deprived Pride of a constitutional right, or that Cippolla's actions were objectively unreasonable.  The Court finds that the facts as alleged in Pride's complaint are not sufficient to overcome Cippolla's defense of qualified immunity.  Accordingly, Defendants' motion to dismiss the claims against Cippolla in his personal capacity is granted.

*Jerry Creel:*

Pride makes a number of factual allegations against Defendant Jerry Creel, not all of which are coherent.  Pride has alleged that Creel continued the "retaliation malicious prosecution of a (third) Biloxi City police hearing action," and that he "intentionally failed to state an authority for his action or a code as the issue was known to be certified in appealite [sic] Court[.]" (Compl. at ¶ 21).  Pride further alleges that Creel, in a letter notifying Pride of a hearing, "failed to specify the authority for the independent municipal police action, the venue, the jurisdiction, the probable cause and with heightened scrutiny failed also to state or give notice that constitutional taking action applied." *Id.* at ¶ 24.  Pride claims that the letter did not notify him of the specific violation with which he was charged, and that Creel did not respond to his request for a specified charge. *Id.*  Pride also alleges that although Creel did not attend the hearing, he later "adjudicated and judged the Plaintiff as guilty," which resulted

in a "second unconstitutional double jeopardy." *Id.*

Pride also claims that Creel caused a search warrant to be executed on his home in violation of the 4th Amendment. (Compl. at ¶ 28). The complaint further alleges that Creel conspired with a demolition contractor to take all of the Plaintiff's personal property, *id.* at ¶ 29, ordered Pride's vehicles to be towed from his property without notice or hearing, *id.* at ¶ 30, and ordered the demolition contractor to remove trees from his property. *Id.* at ¶ 33. Pride claims that Creel denied him access to his property during the demolition process, *id.* at ¶ 31, and Creel informed Pride that he would ensure through Biloxi zoning that Pride would not be permitted "any further building uses for his property[.]" *Id.* at ¶ 35. Pride also claims that Creel ordered that the water supply to his property be turned off without notice, *id.* at ¶ 34, and that Creel attached a second Stop Work Order to Pride's property "without probable cause or notice." *Id.* at ¶ 36.

The Court assumes that Pride alleges that he was deprived of his rights under the 14th Amendment Due Process clause as a result of Creel's actions. Again, to establish liability under Section 1983, Pride must show that Creel intentionally or deliberately caused the deprivation of his rights. *See Daniels*, 474 U.S. at 328. The Court finds that the facts as alleged against Defendant Creel, if true, would establish a knowing violation of Pride's constitutional right to procedural due process. Any reasonable government official would understand that conspiring with a contractor to take an individual's private property is unlawful. The Court makes no finding today regarding the truth of Pride's allegations against Defendant Creel. However, at this

stage of the proceedings, the Court cannot say that Pride has failed to state any facts that would establish a claim against Creel. Accordingly, Defendants' motion to dismiss the claims against Defendant Jerry Creel is denied.

*Mike Andrews:*

Pride has alleged that Defendant Mike Andrews caused the taking of Pride's FEMA trailer by conspiring "by malicious prosecution and fraud by willful misrepresentations . . . . through prmia [sic] fascia [sic] emails and other contacts with FEMA representative[.]" (Compl. at ¶ 37). Pride alleges that this taking occurred without notice and constitutes a due process violation. *Id.* These appear to be the extent of the specific allegations against Mike Andrews. The Court finds that these allegations are conclusory in nature, and alone are not enough to establish that Andrews violated Pride's clearly-established constitutional right(s). These facts are not sufficient to overcome Andrews' defense of qualified immunity. Accordingly, Defendants' motion to dismiss Pride's claims against Defendant Mike Andrews is granted.

*Biloxi City Council and Mayor Holloway:*

Pride's complaint does not make any specific factual allegations against the Mayor or the individual City Councilmen Defendants, George Lawrence, William Stallworth, Charles Harrison, Mike Fitzpatrick, Tom Wall, Ed Gemmill, and David Fayard. In his prayer for relief, however, Pride seeks a "declaratory judgment for deliberate indifference with conspiracy in a [sic] unconstitutional" taking. (Compl. at ¶ 53). Pride goes on to claim that the Biloxi City Council and the Mayor never

23

responded to his written requests for an "appeal of the hearing" or "requests for discipline action for misconduct etc.," and "did not discipline or supervise repeated unconstitutional acts" of other Defendants, "including the Council, in, prima fascia [sic] videoed and documented by Plaintiff." *Id.*

It is not clear exactly what Pride means by some of these allegations, but the Court finds that these facts, as alleged, are not sufficient to draw a reasonable inference that the Mayor or the individual council members each acted in a way that he knew was unlawful. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 129 S.Ct. at 1949 (quoting *Twombly*, 550 U.S. at 570.) The Court cannot say that Pride has pled facts that allow it to draw the "reasonable inference" that the Mayor and the City Council members are liable in their personal capacities for the allegations in Pride's complaint. Therefore, the Mayor and the City Council members are entitled to the defense of qualified immunity. Accordingly, Defendants' motion to dismiss Pride's claims against the Mayor and the City Council members is granted.

## IV. Punitive Damages

Defendants move to dismiss Pride's claims for punitive damages on the grounds that punitive damages may not be assessed against a municipality.

Under Mississippi law, punitive damages are not recoverable against a municipality unless authorized by statute. *Town of Newton v. Wilson*, 91 So. 419 (Miss. 1922). The MTCA provides that punitive damages are not permitted against governmental

entities, even in actions for which governmental immunity is waived.  *See* Miss. Code Ann. § 11-46-15(2).

As noted *supra*, Pride's claims under the MTCA are dismissed, so he will not be permitted to seek punitive damages under those claims in any event.  Additionally, 42 U.S.C. § 1983 does not permit the assessment of punitive damages against municipalities. *See City of Newport v. Fact Concerts, Inc.*, 453 U.S. 247, 261 (1981).

Pride has not pointed to any statute that would permit the award of punitive damages against the City of Biloxi for any of his claims.  Accordingly, Defendants' motion to dismiss Pride's claims for punitive damages against the City of Biloxi is granted.  Defendants' motion does not address, and therefore the Court does not rule on, whether Pride will be permitted to seek punitive damages from Defendant Creel.

## V.  Motion to Stay

Defendants request that, if the motion to dismiss is not granted, the Court stay the current action pending the outcome of Pride's criminal appeal in state court. Defendants assert that Pride's criminal appeal involves "many of the same issues" as this case.  Defendants do not specify which issues this action and Pride's criminal appeal have in common, and Defendants do not suggest that this action will have bearing on the validity of the criminal conviction.  The Court finds that Defendants' motion to stay these proceedings pending the outcome of Pride's criminal appeal in state court is not well-taken.  In this federal action, Pride alleges a deprivation of his procedural due process rights under Section 1983, and the Court see no reason to stay these proceedings pending the outcome of Pride's criminal appeal.  Therefore,

Defendants' motion to stay is denied.

**SO ORDERED AND ADJUDGED** this the 19th day of November, 2011.


s/ *Louis Guirola, Jr.*
LOUIS GUIROLA, JR.
CHIEF U.S. DISTRICT JUDGE